Robert J. SIMMS, Petitioner,

v.

Byron OEDEKOVEN, Sheriff
of Campbell County,
Respondent.

No. 92–97.

Supreme Court of Wyoming.

Sept. 28, 1992.

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender, Stephen R. Johnson, Sr. Asst. Public Defender, for petitioner.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Mary Beth Wolff, Asst. Atty. Gen., for respondent.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT *, and GOLDEN, JJ.

THOMAS, Justice.

The constitutional question presented in this matter is whether a finding by a judicial officer, pursuant to Wyo.R.Crim.P. 46.1, that no condition or combination of conditions will reasonably assure the appearance of the defendant justifies a refusal to set bail. The county court for Campbell County, Wyoming concluded that, in this instance, the only sufficient surety to assure the appearance of the defendant, Robert J. Simms (Simms), was detention and, therefore, the court refused to set bail despite the language of Article 1, Section 14 of the Constitution of the State of Wyoming which provides, "[a]ll persons shall be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great." We hold that the provisions of Wyo.R.Crim.P. 46.1 contravene Article 1, Section 14 of the Constitution, and there was no justification for the court's refusal to set bail. The Constitution of the State of Wyoming must con-

* Chief Justice at time of oral argument.

trol over the provisions of the Wyoming Rules of Criminal Procedure. The Order on Writ of Habeas Corpus entered June 12, 1992 in this matter is confirmed in every respect.

We have a limited record in this matter and, consequently, we rely primarily upon the allegations of the Petition for Writ of Habeas Corpus together with the documents attached to that Petition. The underlying facts are not disputed by the State of Wyoming. From these documents, it appears that about 9:00 P.M. on January 22, 1992 Simms accompanied a woman whom he had just met to her motel room in Gillette, Wyoming. After they entered the room, she left Simms alone for a few minutes while she used the bathroom. Sometime that evening, or early the next morning, Simms left. After he left, the victim realized that she was missing some valuable jewelry and a substantial sum of money.

On January 25, 1992, Simms was arrested in South Dakota on the charge of grand larceny filed in Wyoming pursuant to Wyo. Stat. § 6–3–402(a), (c)(i) (1988).[1] Simms did not consent to extradition from South Dakota and, after a contested extradition hearing, he was ordered extradited about April 24, 1992. At his initial court appearance, the prosecution requested, and received, a continuance pursuant to Wyo. R.Crim.P. 46.1(f).[2] Simms' initial appearance then was pursued on April 28, 1992, and the judge of the county court found that Simms was "a serious flight risk" who would not likely appear voluntarily at his trial. The county court judge ruled, consistently with this finding, that Simms should be held without bond pending adjudication of his case, in accordance with the provisions of Wyo.R.Crim.P. 46.1(e).

Following that ruling, Simms petitioned for a writ of habeas corpus which was filed with this court on April 29, 1992. Simms' contention in his petition was that he was illegally detained because he was denied his right to bail by the ruling of the county court.

This issue is one of first impression in Wyoming, and we have not found a precedent for the circumstances presented in any other jurisdiction. The issue posed is whether Wyo.R.Crim.P. 46.1(e), which permits detention without bail for an accused who is found to be a flight risk, is compatible with the provisions of Article 1, Section 14 of the Wyoming Constitution.

In resisting the petition for writ of habeas corpus, the State argues that it was appropriate to hold Simms without bail because Wyo.R.Crim.P. 46.1(e) allows detention if "[t]he judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community." This rule provision was modeled after 18 U.S.C. § 3142 (1984), a provision of the Bail Reform Act of 1984. The federal courts have upheld the federal statute against a variety of constitutional attacks. *U.S. v. Parker*, 848 F.2d 61 (5th Cir.1988) (Fifth Amendment); *U.S. v. Walker*, 808 F.2d 1309 (9th Cir.1986) (due process); *U.S. v. Portes*, 786 F.2d 758 (7th Cir.1985) (Fifth and Eighth Amendments); *U.S. v. Savides*, 658 F.Supp. 1399 (N.D.Ill.1987), *aff'd* 898 F.2d 1218 (7th Cir.1990), *cert. denied* —— U.S. ——, 110 S.Ct. 3286, 111 L.Ed.2d 795 (1990), *cert. denied* —— U.S. ——, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990), *on remand* 758 F.Supp. 466 (N.D.Ill.1991) (due process). We can see no reason why the federal courts could not also find it compatible with the Eighth Amendment to the Consti-

---

1. Wyo.Stat. § 6–3–402(a), (c)(i) (1988) provides:

   (a) A person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty of larceny.
   * * *.
   (c) Except as provided by subsection (e) of this section, larceny is:
   (i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not

more than ten thousand dollars ($10,000.00), or both, if the value of the property is five hundred dollars ($500.00) or more * * *.

2. Wyo.R.Crim.P. 46.1(f) provides, in pertinent part:

   The hearing shall be held immediately upon the defendant's first appearance before the judicial officer unless that person, or the attorney for the state, seeks a continuance.

tution of the United States which provides only that "excessive bail shall not be required." In our view, Wyo.R.Crim.P. 46.-1(e) would not be invalidated by the provisions of the Constitution of the United States. That Constitution, however, does not encompass language articulating a right to bail as does Article 1, Section 14 of the Wyoming Constitution.

■ This court previously has interpreted the language in our state constitution in this way:

> The right to furnish bail with sufficient sureties, then, arises in favor of any person accused of crime, and before conviction, absolutely and without exception in cases of all crimes not punishable with death * * *.

*State v. Crocker*, 5 Wyo. 385, 40 P. 681, 685 (1895).

Decisions in other states bearing on the same or similar constitutional language are afforded persuasive effect. *Matter of Johnson*, 568 P.2d 855 (Wyo.1977). We have considered similar constitutional provisions from other states and have sought guidance from their courts with respect to the interpretation of this provision. *See Petition of Humphrey*, 601 P.2d 103 (Okla.Crim.App.1979) (listing comparatively the constitutional provisions of the several states). We have found no other state that has held that an accused can be held without bail solely because he is perceived to be a flight risk, however serious.[3] Some courts have recognized the possibility of such a rule. *State v. Johnson*, 61 N.J. 351, 294 A.2d 245 (1972); *Commonwealth v. Truesdale*, 449 Pa. 325, 296 A.2d 829 (1972). New Jersey, however, has cited *Crocker* in support of two propositions:

> The purpose [of denying bail in capital cases] is, of course, to deny bail where the prisoner's assumed apprehension of being put to death if found guilty creates the hazard that he will forfeit the bail rather than forfeit his life.

> Where there is no such hazard bail attends even capital cases.

*Application of Corbo*, 54 N.J.Super. 575, 149 A.2d 828, 834 (1959).

> [I]t was said that an attempt by the lawmakers to forbid bail after indictment whether or not proof to the required degree appeared, could not survive.

*State v. Konigsberg*, 33 N.J. 367, 164 A.2d 740, 744 (1960).

We also have held that the constitutional standards promulgated by the Supreme Court of the United States are minimal, and those rights may be enlarged pursuant to state constitutional provisions if that approach is justifiable. *Richmond v. State*, 554 P.2d 1217 (Wyo.1976). *See also Washakie County School District Number One v. Herschler*, 606 P.2d 310 (Wyo. 1980), *cert. denied sub nom., Hot Springs County School District Number 1 v. Washakie County School District Number 1*, 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980). Our holding is consistent with general law to this effect:

> Nevertheless, * * * the state courts may exceed the federal courts in the granting of rights under the state's own laws or the state's own constitution, as long as they do not violate a restriction of federal law.

JOHN E. NOWAK & RONALD D. ROTUNDA, CONSTITUTIONAL LAW § 1.6, at 21 (4th ed. 1991).

■ Our primary judicial obligation is to uphold the constitution.

> By the constitution which [the people] establish, they not only tie up the hands of their official agencies, but their own hands as well; and neither the officers of the State, nor the whole people as an aggregate body, are at liberty to take action in opposition to this fundamental law.

1 THOMAS M. COOLEY, CONSTITUTIONAL LIMITATIONS 81 (8th ed. 1927).

---

3. Both Illinois and Pennsylvania have suggested that bail may be denied if the accused is a serious flight risk, but their cases are distinguishable because the accused in each was charged with murder. *People ex rel. Hemingway v. Elrod*, 60 Ill.2d 74, 322 N.E.2d 837 (1975); *Commonwealth v. Segers*, 460 Pa. 149, 331 A.2d 462 (1975).

In the first decade after statehood, this court quoted from an earlier work of Cooley saying:

> In American constitutional law the word "constitution" is used in a restricted sense, as implying the written instrument agreed upon by the people of the Union, or any one of the states, as the absolute rule of action and decision for all departments and officers of the government, in respect to all the points covered by it, which must control until it shall be changed by the authority which established it.

*Rasmussen v. Baker*, 7 Wyo. 117, 50 P. 819, 823 (1897) (citation omitted).

■ The language of Article 1, Section 14 of the Constitution of the State of Wyoming provides without equivocation that "all persons shall be bailable," and it must control the right to bail over Wyo. R.Crim.P. 46.1(e). Similarly, it affords a greater right than is specified in the Eighth Amendment to the Constitution of the United States. Our constitution does not permit denial of bail on the ground that the accused is considered to be a serious flight risk.

Another argument advanced by the State is that the language of the constitution is sufficiently expansive to provide for pretrial detention when the accused is a flight risk. The State looks to the language that focuses upon "sufficient sureties." The argument is that the sufficiency of potential sureties is to be considered in connection with a bail hearing and, if no surety is perceived to be adequate to compel the accused to reappear for trial, then he may be detained to provide the "sufficient sureties." According to the State's argument, "petitioner was a significant flight risk, since he had no ties to the community, no job, no family in the area, and had given the police three different social security numbers and may be using different names." There is no reason to disagree with the position of the State that Simms, indeed, is a serious flight risk.

■ In presenting this contention, the State appears to invert the applicable concepts relative to constitutional application.

The State, in effect, is seeking to invoke an exception to what is a clear extension of a right to bail. The general rule is that constitutional provisions should be broadly and liberally construed in order to provide the flexibility to meet changing conditions without departing from the basic principles that are articulated. *See* cases cited in 16 C.J.S. *Constitutional Law* § 18, nn. 67–70 (1984). Conversely, if an exception is articulated or perceived with respect to a constitutional provision, it is to be narrowly and strictly construed. *In re Advisory Opinion to the Governor*, 313 So.2d 717 (Fla. 1975); *Commonwealth v. Yee*, 361 Mass. 533, 281 N.E.2d 248 (1972). The language of Article 1, Section 14 of the Constitution of the State of Wyoming is not vague or ambiguous. There is a clear exception for capital offenses only when the proof is evident or the presumption great, and there is no indication that there is an exception to be found with respect to the right to bail if the only sufficient surety is detention. The application of the concept of narrow construction of such a perceived exception leads us to the conclusion that it is not available to avoid the setting of bail for Simms.

■ In structuring yet a third reason to justify pretrial detention in the case of someone found to be a significant flight risk, the State of Wyoming points to the language in the rules to the effect that "the judicial officer may not impose a financial condition that results in the pretrial detention of the person." Wyo.R.Crim.R. 46.1(c)(2). The State's argument is that the judge was foreclosed from imposing a financial condition for release that results in pretrial detention. Therefore, the State contends, the judge must turn to other means of assuring appearance for trial and, under the federal standard, that may encompass continued detention. The State, in effect, argues that the judge must choose between imposing a financial condition that results in pretrial detention or pretrial detention because of the risk of flight. This argument fails to acknowledge that either course would violate the provisions of Arti-

cle 1, Section 14 of the Wyoming Constitution.

 We are unable to accept this argument by the State of Wyoming. Wyo. R.Crim.P. 46.1(c)(2) is not pertinent to whether the individual who is charged will be admitted to bail. Rather, that provision inhibits setting the amount of bail at an amount so high that it would substantively and actually deny bail to the accused. *Carlisle v. Landon*, 73 S.Ct. 1179, 97 L.Ed. 1642 (1953) (Opinion of Justice Douglas Sitting in Chambers). In this case, the question of excessive bail is not before us since no bail was set. In this regard, however, the purpose of the required surety is to assure the appearance of the accused at his trial. "The word 'appearance' means a voluntary submission to the jurisdiction in whatever form manifested." *Ex parte Forbell*, 82 N.Y.S.2d 109, 110 (N.Y. S.Ct., Special Term, Richmond County 1948) (quoting *Citizens' Trust Co. of Utica v. R. Prescott & Son, Inc.*, 221 A.D. 426, 223 N.Y.S. 191, 197 (4th Dept.1927)). *See generally* the cases cited in 6 C.J.S. *Appearances* § 18 (1975). We are in accord that bail may not be set so as to inhibit the release of the accused, but it may be set higher than the amount perceived to be necessary to forcibly return the accused to trial.

The amount of bail, like any other condition of probation, is designed to assure the appearance of the accused when he is ordered to appear. In setting bail, the court may consider the sum reasonably necessary to cause one to appear, rather than flee the court's jurisdiction. In this regard, we note our holding that violations of other conditions of bail, including a requirement of good behavior, can cause forfeiture of the bond, reaffirming our decision in *Application of Allied Fidelity Insurance Co.*, 664 P.2d 1322 (Wyo.1983). We recognize that determining the amount of surety which is sufficient to cause the accused to appear, together with other appropriate conditions for the admission of an accused to bail, is a demanding judicial task, but it is a decision the law requires.

The Order on Writ of Habeas Court of this court entered June 12, 1992 is confirmed in every respect.